# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
March 25, 2014 Session

## STATE OF TENNESSEE v. AARON GUILLIAMS

**Appeal from the Circuit Court for Anderson County**
**No. B0C00708    Donald Ray Elledge, Judge**

---

**No. E2013-01405-CCA-R3-CD - Filed July 2, 2014**

---

Aaron Guilliams ("the Defendant") pleaded guilty to one count of attempted aggravated assault. Pursuant to a plea agreement, the Defendant was sentenced to two years, suspended to supervised probation, and reserved the right to have a hearing to determine his eligibility for judicial diversion. After a hearing, the trial court denied the Defendant's request for judicial diversion. The Defendant timely appealed the trial court's ruling. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment
of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Kevin C. Angel, Oak Ridge, Tennessee, for the appellant, Aaron Guilliams.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Dave Clark, District Attorney General; and Sandra Donaghy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

An Anderson County Grand Jury indicted the Defendant on one count of statutory rape. The Defendant subsequently pleaded guilty to the amended charge of attempted aggravated assault and received a sentence of two years, suspended to supervised probation. Per the plea agreement, the Defendant reserved the right to have a hearing to determine his

eligibility for judicial diversion. A hearing was held pursuant to the Defendant's request for judicial diversion, and the following evidence was adduced:

Tiffany Rodd, a probation officer with the Tennessee Department of Correction, testified that she was assigned to the Defendant's case and completed a presentence report. In preparation of the report, Rodd testified that she interviewed the Defendant and provided him with a questionnaire to complete. She testified that, for the purpose of the presentence report, the Defendant chose not to provide his own version of the events in question. The presentence report showed that the Defendant had been adjudicated delinquent as a juvenile for possession of a controlled substance and that he had completed probation. The report also indicated that the Defendant dropped out of high school and obtained a GED. Also in the presentence report, the Defendant described his mental health as good and admitted to prior alcohol abuse. Rodd testified that the Defendant qualified as a "medium risk" for recidivism according to the "Level of Service Case Management Inventory," which is a "risk and needs assessment."

On cross-examination, Rodd agreed that the Defendant was willing to meet with her when she requested and that he did not provide any information that was intentionally incorrect. She testified that she was not able to verify the employment history that the Defendant gave her.

The presentence report entered into evidence without objection contained the investigating officer's grand jury report. During oral argument on appeal, defense counsel, for the first time, asserted that these portions of the presentence report constituted double hearsay and, thus, any reliance upon those portions by the trial court constituted error. However, we note that there was no contemporaneous objection to the report at the hearing, and the Defendant makes no argument and cites us to no authority supporting such an objection in his brief. "By failing to make a contemporaneous objection to testimony, a defendant waives appellate consideration of the issue," and, absent an objection, the report properly was admitted as proof. State v. Robinson, 146 S.W.3d 469, 511 (Tenn. 2004). Therefore, we summarize here the statements contained in the presentence report:

The victim[1] was fourteen years old when the assault occurred in July 2009. During an interview with Detective Russell Barker of the Clinton Police Department ("CPD"), she stated that she attended a party at the Defendant's house where alcohol was served. While at the party, the victim became drunk and fell in the driveway. According to the victim, two friends helped her up and brought her to the Defendant's bed, where she passed out. The victim awoke briefly and remembered the Defendant vaginally penetrating her with his penis.

---

[1] It is the policy of this Court not to use the names of victims of sexual crimes.

The victim stated that her next memory was being in the shower with the Defendant. While in the shower, the Defendant asked her to touch his penis. When she refused, the Defendant became angry. At some point during or directly following the shower, the Defendant vaginally penetrated her a second time. The victim remembered having a brief discussion with the Defendant in which he claimed to have a satanic tattoo on his stomach. The Defendant attempted to have sex with the victim again, but she protested. At that point, the victim remembered that someone called the Defendant out of the bedroom. The victim fell asleep and, when she awoke, the victim found that the button and zipper on her shorts were damaged. The Defendant gave the victim a ride home and told her, "We didn't have sex."

The victim testified at the hearing and confirmed that she was fourteen years old at the time of the events in question. She testified that, as a result of the Defendant's prosecution, she recently had "been bullied so much by friends of [the Defendant] that [she] had to quit going to school." She added that she was forced to transfer to home schooling. The victim further testified that the Defendant's assault had "affected [her] relationships with people and not letting people get close and [she was] in constant fear all the time." When asked how she felt about the Defendant potentially receiving judicial diversion, the victim responded, "I'm never going to be able to forget it; why shouldn't it be on his record forever?"

On cross-examination, the victim testified that the Defendant had not tried to contact her since the assault. The victim admitted that, around the time of the assault, she had told people that she was older than her actual age. She admitted that her "MySpace" profile at the time listed her age as sixteen years old. At the conclusion of the victim's testimony, the State rested its case-in-chief.

The Defendant testified that he dropped out of high school in 2008 and completed a GED. He stated that he had worked various jobs before obtaining a job at a tire factory, which was the job he held at the time of the hearing. The Defendant testified that he had not used marijuana since high school and did not drink alcohol "to excess." The Defendant testified that, around the time of the assault, he had heard the victim claim that she was older than fourteen years old.

On cross-examination, the Defendant stated that he was twenty years old at the time of the assault. He admitted that officers investigating the incident had found the victim's underwear in his bedroom. When asked why he had not completed his version of the events on the questionnaire given to him by Rodd, the Defendant stated, "I'm not sure why. I don't remember." The Defendant admitted that he had vaginal intercourse with the victim in his bedroom and in the shower. However, he denied trying to get the victim to touch his penis

in the shower.  According to the Defendant, the victim was "completely awake and conscious" while they were having sex, and the sex was "completely consensual."

At that point, the following exchange occurred:

State: Do you have some sort of a tattoo on your stomach that is satanic in nature?

Defendant: No.

State: Would you have said to anyone that you had such a tattoo?

Defendant: No.

State: Are you willing to reveal your stomach area to the court officer for him to determine whether you have any tattoos?

Defendant: I have a tattoo, but I don't see why it is necessary for me to reveal my stomach.

The trial court found that the presence of the tattoo was relevant to the Defendant's credibility and ordered him to show the tattoo.  Referring to the tattoo, the trial court stated, "It looks to me to be the head of the devil.  It represents the satanic emblem.  It's got the six star emblem and it also looks to be the head of the devil."

The Defendant testified that he could not remember whether Rodd had asked him to provide proof of his current employment and confirmed that he had not provided her any such proof.

On redirect examination, the Defendant testified that his tattoo represented "a nature god," stating, "It's just a tattoo, just like I got it when I was 18; I was really into heavy metal at the time."  When asked whether his tattoo was Wiccan, the Defendant responded, "I assume so, yes, like a Pagan thing."

At that point, the trial court had the following exchange with the Defendant:

Trial Court: I want to make sure I understand.  You are saying that it is Wicken [sic]?  Is that what you're saying?

Defendant: Yes.

Trial Court: You understand Wicken [sic] is the belief as it pertains to Satan . . .

Defendant: I want to say that I do not believe that . . .

Trial Court: Let me finish.  There is male and female Wickens [sic], so are you one of those?

Defendant: I am an athiest.

Trial Court: But you have a tattoo, a Wicken [sic] tattoo.  You acknowledge under oath today that it's on your stomach.  Is that correct?

Defendant: Yes, sir.

Trial Court: Six-pointed star, correct?

Defendant: Yes.

Following this exchange, the defense rested its case-in-chief.  The trial court denied the Defendant's request for judicial diversion and entered the Defendant's sentence of two years suspended to supervised probation on his conviction for the amended charge of attempted aggravated assault.  The Defendant timely filed a notice of appeal.

## Analysis

Initially, we note that the Defendant failed to include a transcript of the guilty plea hearing in the record.  It is the Defendant's duty to compile a complete record for appeal.  See Tenn. R. App. P. 24(b).  Our supreme court, however, has held that "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review."  State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012).  We hold that the presentence report and the transcript of the sentencing hearing are adequate to conduct a meaningful appellate review.

The Defendant alleges that the trial court abused its discretion in denying his request for judicial diversion.  Specifically, he asserts that the trial court based its decision on an "inaccurate characterization of the evidence" and that it improperly considered the Defendant's religious beliefs.

Following a conviction, a trial court "may defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty." Tenn Code Ann § 40-35-313(a) (Supp. 2008). Judicial diversion is a form of "legislative largess whereby a defendant adjudicated guilty may, upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge.'" State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999) (quoting Tenn. Code Ann. § 40-35-313(b)). In the instant case, the Defendant is a qualified candidate for judicial diversion because he pleaded guilty to a Class D felony,[2] has not previously been convicted of a felony or Class A misdemeanor, has not previously been granted diversion, and is not seeking deferral for a sexual offense. See Tenn. Code Ann. § 40-35-313(a)(1)(B)(i) (Supp. 2008).

There is no presumption that a defendant is a favorable candidate for judicial diversion. State v. Anderson, 857 S.W.2d 571, 573 (Tenn. Crim. App. 1992). Whether a defendant should be granted judicial diversion is a question left to the sound discretion of the trial court. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In determining whether a qualified defendant is eligible for judicial diversion, a trial court must consider: "(a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; and (f) the deterrence value to the accused as well as others." Id.; see also State v. Electroplating, Inc., 990 S.W.2d 211, 229 (1998). Additionally, a trial court also may consider "whether judicial diversion will serve the ends of justice – the interests of the public as well as the accused." Parker, 932 S.W.2d at 958. In weighing these factors, the trial court must place an explanation of its ruling on the record. Electroplating, 990 S.W.2d at 229.

Our supreme court recently held that the standard of review applicable to a trial court's decision to grant or deny judicial diversion is an abuse of discretion standard with a presumption of reasonableness. See State v. Kiara Tashawn King, ___ S.W.3d___, ___, No. M2012-00236-SC-R11-CD, 2014 WL 1622210, at *9 (Tenn. Apr. 23, 2014). Therefore,

> when the trial court considers the Parker and Electroplating factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision.

---

[2] See Tenn. Code Ann. §§ 39-13-102(e)(1)(A) (2006), 39-12-107(a) (2006).

Id.  However, if the trial court "fails to consider and weigh the applicable common law factors," we either may conduct a de novo review or remand the issue for reconsideration. Id.

In denying the Defendant's request for judicial diversion, the trial court determined that the Defendant was not credible based on his testimony regarding the tattoo, stating:

> This Court finds that the [D]efendant in this case from the testimony that the Court has heard and observed is not credible at all.  That means I don't have to believe anything that he says.  For him to say when he's asked whether or not there is a satanic emblem on his stomach, he categorically under oath in a proceeding that's important – and to me, that's part of the definition of perjury – denies he has a satanic emblem.  Then after going on, he says: Well, I do have a tattoo.  And then he says: it's not satanic.  And then he says: Well, he's a Wicken [sic].

> And I asked him directly while he was under oath, does he understand that that's the worship of Satan?  And he said, I'm an atheist.  He never has answered me yet.  Well, that's what an atheist is, they don't believe in God. They believe in Satan.  He has yet to answer that.  But in any event, let me go further to the report itself.

We agree with the Defendant that the trial court erred in its remarks regarding the religious nature of the Defendant's tattoo.  Indeed, "[s]entencing should exclude all considerations respecting race, gender, creed, religion, national origin and social status of the individual."  Tenn. Code Ann. § 40-35-102 (4) (Supp. 2008).  However, we note that the subject of the Defendant's tattoo only arose because it was relevant to a statement the Defendant allegedly made to the victim about the tattoo at the time of the assault.  It is evident from the record that the trial court's remarks about the tattoo were not a consideration of the Defendant's religious practice for the purpose of determining his sentence.  Rather, the trial court's consideration of the Defendant's testimony regarding his tattoo was limited to the credibility of the Defendant's testimony at the sentencing hearing and the trial court's perception that the Defendant was dishonest about the tattoo.  Therefore, we hold that the trial court's error in remarking about the religious nature of the Defendant's tattoo was harmless.

Notwithstanding the trial court's erroneous comments regarding the Defendant's tattoo, the trial court further considered and weighed the applicable common law factors. The trial court based its decision to deny judicial diversion in part on the nature and circumstances of the offense.  The trial court noted the disparate ages of the victim and the

Defendant at the time of the assault. The trial court also noted that the assault had a "tremendous" effect on the victim, citing the detriment caused to the victim's personal relationships and her testimony that she lived in "constant fear" as a result of the assault. The trial court stated, "Obviously, the victim has been significantly impacted by the actions of the [D]efendant [who was] 20 years old . . . she was 14 years old." Furthermore, the trial court noted the Defendant's degree of responsibility in hosting a party where alcohol was served to minors. The trial court recounted the victim's statement regarding the assault and found the victim to be credible. Based on her statement, the trial court concluded that the circumstances of the offense amounted to an "aggravated rape with someone who's unconscious."

In considering the Defendant's amenability to correction, the trial court determined that the Defendant did not fully comply with the information requested by Rodd in preparation of the presentence report. In considering the Defendant's social history, the trial court noted the Defendant's employment history, that he had dropped out of high school, and that he previously had used marijuana. The trial court also took note of the fact that the Defendant began drinking alcohol at the age of sixteen and continued to drink until 2012, the same year that he pleaded guilty in the instant case. The trial court also recounted some aspects that ran in favor of diversion, including the Defendant's criminal record which showed that he had completed probation for his two juvenile offenses and that the Defendant had completed a GED. Furthermore, the trial court took note of the fact that the Defendant reported his mental and physical health to be "excellent." Finally, the trial court again noted the disparate ages of the victim and the Defendant and stated, "I think there needs to be a deterrence value in this, and I think it would serve the interest of justice to deny him judicial diversion based upon the proof that I have heard today."

In determining whether the Defendant was an appropriate candidate for judicial diversion, the trial court considered the Parker and Electroplating factors, specifically identified the relevant factors, and placed its reasoning on the record. Therefore, we afford the trial court's decision to deny judicial diversion a presumption of reasonableness and must uphold that decision "so long as there is any substantial evidence to support the trial court's decision." King, ___ S.W.3d at ___, 2014 WL 1622210, at *9. As set forth above, there is substantial evidence in the record to support the trial court's decision. Therefore, we hold that the trial court did not err in the exercise of its discretion by denying the Defendant's request for judicial diversion.[3] Accordingly, the Defendant is entitled to no relief on this basis.

_____

[3] Even if the trial court's error regarding the religious nature of the tattoo could be deemed to have tainted the trial court's analysis on the issue of judicial diversion, our de novo review of the record would lead us to conclude that the Defendant is not entitled to a grant of judicial diversion. See King, 2014 WL 1622210, at *9.

-8-

## Conclusion

For the reasons set forth above, we affirm the judgment of the trial court.


_____
JEFFREY S. BIVINS, JUDGE